UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUSTIN FREGOSI,

    Plaintiff,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, CHRISTIE DOTSON, and JAMIE YOUNG,

    Defendants.

CASE NO. 3:18-cv-5440-RJB

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

This matter comes before the Court on Defendants' Motion for Summary Judgment and Qualified Immunity. Dkt. 27. The Court has considered the pleadings filed regarding the motion and the remainder of the record herein.

On June 4, 2018, Plaintiff Justin Fregosi filed this case and moved to proceed in forma pauperis ("IFP"). Dkt. 1 and 1-1. His IFP application was granted. Dkt. 3. On August 14, 2018, Plaintiff filed an Amended Complaint and asserts, in part, that the Defendants violated his due process rights when Christie Dotson and Jamie Young, both Department of Health and Human Services ("DSHS") social workers, testified and/or filed pleadings in state court that Plaintiff had a prior felony child abuse conviction which resulted in his children being placed in

foster care. Dkt. 13. Plaintiff claims that he had no such conviction, and while one of his children was in foster care, the child was abused. *Id.*

On May 16, 2019, the Defendants filed the motion for summary judgment, seeking dismissal of the case. Dkt. 27. Plaintiff's motion to continue was granted and the motion for summary judgment was renoted for June 14, 2019. Dkt. 37. The motion is now ripe. For the reasons provided below, the Defendants' summary judgment motion (Dkt. 27) should be granted.

## I.     FACTS AND PROCEDURAL HISTORY

### A. PLAINTIFF FREGOSI'S CONTACT WITH WYOMING LAW ENFORCEMENT AND WYOMING CHILD PROTECTIVE SERVICES

On July 20, 2011, Fregosi was charged by information, in Carbon County, Wyoming District Court, with felony child abuse, misdemeanor battery on a household member, misdemeanor false imprisonment, and misdemeanor child endangerment under the Wyoming criminal codes. Dkt. 29, at 32-33. According to the supporting affidavit of Rawlins Police Detective Dale Miller, Fregosi's then wife reported that he had been abusive with her and her child, A.J. (Fregosi's 18-month-old stepson). *Id.,* at 34-37. As it related to A.J., she reported that Fregosi "picked A.J. up by the left arm/shoulder and threw him on a mattress that was laid on a hardwood floor. . . He then picked up A.J. in the same manner and threw him on the bed." *Id.,* at 35. His wife asserted that she "was very scared for A.J.'s safety" and that it "was an ongoing issue." *Id.* She maintained that Fregosi threatened to kidnap A.J. and take him to California. *Id.* The officers observed bruising on A.J.'s upper body. *Id.* In his affidavit, Detective Miller noted that Fregosi had two additional convictions for battery on a household member. *Id.*, at 44. On July 25, 2011, the information was amended to change the misdemeanor charge of battery of a household member to a felony. *Id.*, at 39-40.

After entering into a plea deal with the state, the charges were reduced to misdemeanor reckless endangerment; Fregosi pled no contest to the charge, and on March 7, 2012, he was sentenced to 180 days of confinement, with credit for time served. Dkt. 29, at 46-70.

On July 23, 2015, Fregosi's parental rights to his child, R.C.F. (born in 2006), were terminated by order of the Carbon County, Wyoming, District Court. Dkt. 29, at 28-30.

### B. PLAINTIFF FREGOSI CONTACTS WASHINGTON CPS REGARDING HIS CHILDREN C.F. AND M.F. AND THEIR EVENTUAL DEPENDENCY

On August 13, 2017, a Washington CPS intake referral was received from Fregosi "alleging that A.B., the mother of his children, C.F. (born 2016) and M.F. (born 2017), had mental health issues and had threatened to harm herself," including by driving her car into a wall. Dkts. 32, at 2 and 31, at 24. A DSHS Family Assessment Response social worker, and Defendant here, Jamie Young, was assigned to handle the report. *Id*.

Defendant Young investigated, including having conversations with Fregosi, A.B., the children's mother, and the children's maternal grandmother, who also lived in the home. Dkt. 32, at 2-3. Defendant Young states that she discussed concerns about the mother's untreated mental health issues, allegations of abuse between Fregosi and the children's mother, and offered various in-home services. *Id.,* at 2. Defendant Young referred the family to another division of DSHS to obtain a mental health assessment and put a parenting plan in place. *Id.*

On September 12, 2017, Defendant Young met with the children's maternal grandmother. *Id.* Based on information from that meeting, Defendant Young contacted Wyoming Child Protective Services social worker Lisa Hardy, that same day. *Id.* Defendant Young states that she recorded the details of the conversation in her case notes (Dkt. 32, at 3); The relevant case note provides:

> This SW contacted Lisa Hardy SW out of Wyoming who stated that Justin has a long history with CPS. She stated that he had his parental rights of his son R.

terminated 02/2016. She also stated that she felt Justin was scary as he intimidated her with hate mail throughout the process even though she was unable to make contact with him on a regular basis. He defaulted on the termination and did not fight the petition. She states that he has a history with an 18-month-old that was not biologically his, that he picked the child up by the arms and threw him to the ground at least two times. Lisa states he went to prison for the offense.

Dkt. 32, at 15.

Defendant Young states that, "[d]ue to her concerns for the children's safety, [she] consulted with [her] superiors . . . and a decision was made to proceed with the filing of a dependency petition." Dkt. 32, at 3. Defendant Young sent records requests regarding Fregosi to Wyoming's CPS and the Rawlins, Wyoming police department. *Id.*

Before the substantiating information arrived, on September 13, 2017, Washington DSHS court services social worker, and Defendant here, Christie Dotson, prepared two separate dependency petitions for both Fregosi's children, C.F. (born 2016) and M.F. (born 2017). Dkt. 31, at 2. Defendant Dotson states that she reviewed all Defendant Young's case notes, including the case note relating to information about Fregosi received from the social worker in Wyoming. *Id.* She included that information in the Dependency Petitions under the heading of "Allegations" (of which there are 18), as follows:

> 17. On 09/12/2017, the FAR social worker spoke with a social worker in Wyoming who stated that Mr. Fregosi has a long history with CPS. The Wyoming social worker reported that Mr. Fregosi had his parental rights terminated to an older son in February of 2016. The social worker further stated that Mr. Fregosi was scary and he intimidated her with hate mail throughout the case, though she was unable to maintain contact with him on a regular basis. The social worker additionally stated that Mr. Fregosi had history with an 18-month-old child that was not biologically his. Mr. Fregosi picked the child up by the arms and threw him to the ground at least two times. Mr. Fregosi went to prison for the offense.

Dkt. 31, at 11 and 41.

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND QUALIFIED
IMMUNITY- 4

In an October 2017 meeting between CPS, Fregosi, his lawyer and others, his lawyer informed the department that he "did not believe that [Fregosi] had been convicted of felony child abuse." Dkt. 33, at 12.

On November 28, 2017, Kitsap County, Washington Superior Court, Juvenile Division, held a dependency fact-finding hearing which concluded on December 4, 2017. Dkt. 30, at 1-2. Fregosi was represented by counsel. *Id.,* at 6. On December 8, 2017, the court found that the children were dependent pursuant to RCW 13.34.030. Dkt. 30, at 6-15. In its' findings of fact, the court did not include any discussion of allegations that Fregosi had been incarcerated in Wyoming for child abuse. Dkt. 30, at 7-8. The court's decision found that the following facts established dependency were proven by a preponderance of the evidence:

> (1) In analyzing the relevant law applicable to a finding of dependency, the court discussed *In re Dependency of Schermer,* 161 Wn.2d 927, 169 P.3d 452 (2007) at length . . .
>
> (2) The two children involved in this action are 16 months old and 4 months old. They are completely dependent upon other for their care, and are especially vulnerable due to their age.
>
> (3) The court finds the State's witnesses in this matter credible.
>
> (4) The court finds that the parents' testimony minimized the extent of domestic violence in their relationship. The testimony at trial supports the court's finding that domestic violence exists between Mr. Fregosi and Ms. B.
>
> (5) The court finds that each parent has been both a victim of domestic violence from the other parent and a perpetrator of domestic violence against the other parent. The existence of domestic violence in their relationship has placed their children at serious risk of substantial damage to their psychological and physical development.
>
> (6) The court finds that once Mr. Fregosi moved onto the same property with Ms. B, there was an escalation in the parent's relationship with one another, and that escalation affected Ms. B's mental health and therefore placed the children at substantial risk of harm to their psychological and physical development.
>
> (7) When Ms. B's mental health escalated due to interactions with Mr. Fregosi, she made statements of self-harm. Statements of self-harm must be taken

seriously, and Ms. B's behavior when making those statements placed the two minor children at risk of substantial harm.

(8) The court finds that Exhibit 3, the Order on Motion for Joint Custody, is reliable and supports the opinions of the State's witnesses. Exhibit 3 is historical evidence that exhibits a pattern of controlling behavior by Mr. Fregosi.

Dkt. 30, at 7-8. Fregosi challenged the superior court's determination on appeal; on June 13, 2018, the Washington Court of Appeals, Division II, affirmed the superior court's determination of dependency. Dkt. 30, at 17-26. The Court of Appeal's order does not mention any allegations relating to Fregosi spending time in custody in Wyoming for child abuse. *Id.*

Fregosi maintains that he noticed bruises on his son while he was in foster care, and feels that the child was being abused. Dkt. 35.

**C. PROCEDURAL HISTORY**

On June 4, 2018, Fregosi filed this case. Dkt. 1. In his Amended Complaint, he alleges that the Defendants "violated Plaintiffs['] 5th and 14th Amendment (due process of law)." He asserts that they "committed perjury 18 US Code 1621, 28 US Code 1746 false allegations of child abuse and imprisonment and resulting in [his] children having been unlawfully taken from [him] and the physical abuse of [his] son while in foster care." Dkt. 13, at 5. He also makes reference to "18 US Code 1001, 1002, 1018." *Id.*, at 3. Fregosi seeks $5,000,000 in damages for the constitutional violations and for the "physical and emotional abuse of his children." *Id.*

The Defendants filed their motion for summary judgment, seeking dismissal of the case, arguing that: (1) Fregosi cannot maintain a claim under the federal perjury statutes to his children's state dependency proceedings, (2) he does not have standing to represent his children pro se, (3) his claims against Washington, DSHS, and individuals acting in their official capacity should be dismissed because of Eleventh Amendment immunity, and because they are not "persons" for purposes of 42 U.S.C. § 1983, (4) his claims against individual Defendants Young

and Dotson should be dismissed because they did not violate his substantive or procedural due process rights, and even if they had, they are entitled to qualified immunity. Dkt. 27. The Defendants sent a notice to Fregosi pursuant to *Rand v. Rowland,* 154 F.3d 952, 957 (9th Cir. 1998). Dkt. 28.

In his response, the Plaintiff asserts that Defendants "commit[ted] perjury and submit[ted] false evidence as noted in section 17 of the petition. This section contains the false allegation of felony child abuse imprisonment. It was this knowingly false information provided by . . . Young [and] . . . Dotson . . . that allowed for the removal of my children from my care." Dkt. 33, at 2. Plaintiff argues that "case workers do not have the constitutional right to lie," and that Young and Dotson failed to conduct due diligence. *Id.,* at 3. He asserts that the state's allegation of domestic violence is false, and that the state has no evidence that he committed domestic violence. *Id.* Fregosi maintains that both Young and Dotson had the responsibility of ensuring the information they provided was true and correct and they failed to do so. *Id.,* at 4. He argues that Young and Dotson knew their allegations were false and failed to amend this false information. *Id.*

In addition to filing a response on May 29, 2019 (Dkt. 36), on May 22, 2019, the Plaintiff filed a motion to continue the summary judgment (Dkt. 34). In this pleading, the Plaintiff argued that on May 21, 2019 he contacted Wyoming Department of Family Services caseworker, Lisa Hardy, who the Defendants maintain gave them information about the Plaintiff prior child abuse conviction. Dkt. 34. According to the Plaintiff, Ms. Hardy told him that she did not tell the Defendants that he went to prison for felony child abuse. *Id.* He asserts that he also talked with a Wyoming assistant attorney general who indicated that they were willing to submit something to the Washington court. *Id.*

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND QUALIFIED
IMMUNITY- 7

The Plaintiff's motion for a continuance was granted and Defendants' motion for summary judgment was continued until June 14, 2019. Dkt. 37. The Plaintiff was given until June 10, 2019 to supplement his response and the Defendants' reply deadline was reset to June 14, 2019. *Id.*

The Plaintiff did not supplement his response, but filed a motion for court order of guardian ad litem/next fried in support of minor children (Dkt. 39) and Plaintiff's Motion for Commission to take Deposition of Lisa Hardy (Dkt. 40). The Defendants replied (Dkt. 41) and the motion for summary judgment is ripe for decision.

## II. DISCUSSION

### A. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B. CLAIMS UNDER FEDERAL PERJURY STATUTES OR OTHER FEDERAL STATUTES

In addition to the due process claims, which are addressed below, the Plaintiff points to several criminal statutes, including: 18 U.S.C. § 1621, 28 U.S.C. § 1746, and "18 US Code 1001, 1002, 1018." Dkt. 13.

Each of these relates to statements in federal proceedings. Pursuant to 18 U.S.C. § 1621, whoever takes an oath to truthfully testify "before a competent tribunal . . . of the United States" and willfully and contrary to such oath state or subscribes to any material matter" which they do not believe to be true is guilty of perjury. Likewise, 28 U.S.C. § 1746, "Unsworn Declarations under Penalty of Perjury" relate to pleadings filed in federal court. False statements to the federal government are criminalized under 18 U.S.C. §1001, possession of false papers with the intent to use them to defraud the federal government is criminalized under 18 U.S.C. §1002, and false certifications to the federal government are criminalized under 18 U.S.C. §1018.

To the extent the Plaintiff attempts to make a claim under any of these statutes, he lacks standing to bring them; there is no private right of action under these criminal statutes. *See United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("[T]he United States Attorney is responsible for the prosecution of all criminal cases within his or her district."); *Lee v. United States Agency for Int'l Dev.*, 859 F.3d 74, 76 (D.C. Cir. 2017)(no private right of action under 18 U.S.C. §1001). The Plaintiff fails to demonstrate how he is maintaining a claim under the federal perjury statutes as it relates to proceedings in state court. The motion should be granted and these claims dismissed.

### C. JUSTIN FREGOSI'S STANDING TO REPRESENT HIS CHILDREN PRO SE

Although a non-attorney may appear pro se on behalf of himself, he has no authority to appear as an attorney for others. *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987); *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997). Further, generally, plaintiffs do not have standing to bring claims based on the rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975*); Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir.1993).

Plaintiff may not appear *pro se* for his children. The Defendants' motion for summary judgment on the claims Plaintiff asserts for his children should be granted. The Plaintiff's motion for appointment of a guardian ad litem (Dkt. 39) does not solve his inability to represent them in court. The claims he attempts to assert on their behalf should be dismissed.

### D. CLAIMS UNDER 42 U.S.C. § 1983 GENERALLY

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official participation in a civil rights violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).

### E. CLAIMS ASSERTED AGAINST WASHINGTON AND ITS AGENCY, DSHS

The Eleventh Amendment to the United States Constitution bars a person from suing a state in federal court without the state's consent. *See Seminole Tribe of Florida v. Florida,* 116 S.Ct. 1114, 1131 (1996); *Natural Resources Defense Council v. California Dep't of Transportation*, 96 F.3d 420, 421 (9th Cir. 1996). Eleventh Amendment immunity extends to state agencies. *Pennhurst State Sch. & Hosp. v. Holdeman*, 465 U.S. 89, 101-102(1984). Eleventh Amendment immunity is not automatically waived in actions brought under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332 (1979). Washington has not waived the protection of the Eleventh Amendment. *Edgar v. State*, 92 Wn.2d 217 (1979).

The Defendants' motion for summary judgment on the claims asserted against the State or against DSHS should be granted and the claims dismissed. The Plaintiff's claims against the State and DSHS are barred by the Eleventh Amendment.

Neither states, state agencies, nor state officials acting in their official capacities are persons for purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 48, 71 (1989).

The Defendants' motion for summary judgment on the Plaintiff's § 1983 claims asserted against the state, DSHS or the individual defendants, acting in their official capacities, should be granted. Because they are not persons within the meaning of § 1983, the Plaintiff has not stated a cause of action against the state, DSHS or any of the named individuals acting in their official capacities. Those claims should be dismissed.

**F. CLAIMS ASSERTED AGAINST INDIVIDUAL DEFENDANTS YOUNG AND DOTSON**

Defendants in a Section 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow*, at 815. The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*., at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be

determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. While the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as mandatory. *Pearson*, at 811. "The judges of ... the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*.

The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Saucier*, at 2156.

1. <u>Violation</u>

The Plaintiff asserts both procedural and substantive due process claims against Young and Dotson.

In the Ninth Circuit, "[p]arents and children have a well-elaborated constitutional right to live together without governmental interference." *Wallis v. Spencer,* 202 F.3d 1126, 1136 (9th Cir. 2000). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Id*.

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND QUALIFIED
IMMUNITY- 13

*a. Procedural Due Process*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319 332 (1976). The core requirement of the Due Process Clause is that a person deprived of a liberty interest "be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 984 (9th Cir. 1998). "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Id.,* at 982.

The Plaintiff's claim for violation of his procedural due rights should be dismissed. He fails to demonstrate "a denial of adequate procedural protections." The Plaintiff failed to show that he did not have notice of all procedures related to the dependency. He actively participated in the dependency fact-finding hearing, which was held in Kitsap County, Washington Superior Court. He was represented by counsel. He appealed the decision, through counsel, to the Washington state Court of Appeals.

*b. Substantive Due Process*

"To establish a substantive due process claim a plaintiff must ... show a government deprivation of life, liberty, or property." *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1110 (9th Cir. 2010). Parents generally have a liberty interest in the custody of their children. Further, "[t]he Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official." *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Id.,* at 789.

The Defendants' motion for summary judgment should be granted on the Plaintiff's due process claim for deliberate fabrication of evidence against Young and Dotson. That claim should be dismissed.

The Plaintiff has failed to point to evidence in support of the first element. He has not shown that either Young or Dotson deliberately fabricated evidence. Despite having been given an extension of time to collect the evidence he felt support his claim, he did not produce any evidence. Discovery has been closed for several weeks. He fails to show that his attempt at taking Ms. Hardy's deposition in Wyoming would result in a denial of the motion for summary judgment. To the extent that the Plaintiff objects to the use of the term "prison" rather than "jail" in the dependency petition, "not all inaccuracies in an investigative report give rise to a constitutional claim." *Spencer*, at 798.

The Plaintiff has also failed to point to any evidence of causation, the second element of the claim.

> To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the proximate cause or legal cause of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question.

*Spencer*, at 798.

The Plaintiff has failed to point to any evidence that the statements in the allegation section of the dependency proceeding lead to the deprivation of his liberty interest (his parental rights) either as the cause in fact or the legal cause. There is nothing in the record to suggest that the information the Plaintiff says was false was introduced at the Kitsap County, Washington Superior Court, Juvenile Division dependency fact-finding hearing. The superior court did not discuss any of Fregosi's alleged convictions in her finding of dependency. The Washington

Court of Appeals also did not mention any of Fregosi's alleged convictions as a basis for their decision. His claim should be dismissed.

### 2. Qualified Immunity

The Court will not reach Defendants' claim for qualified immunity. It is unnecessary because Plaintiff has failed to point to any evidence that his constitutional rights have been violated. No additional analysis is required. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1060 (9th Cir. 2006).

## G. CONCLUSION AND ADDITIONAL MOTIONS

The Defendants' motion for summary judgment should be granted and the case dismissed. Plaintiff's newly filed motions (Dkts. 39 and 40) should be stricken as moot.

## III. ORDER

- The Defendants' Motion for Summary and Qualified Immunity (Dkt. 27) **IS GRANTED;**
- This case **IS DISMISSED**; and
- All pending motions **ARE STRICKEN AS MOOT.**

The Clerk is directed to send copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 17th day of June, 2019.

*Robert J. Bryan* (signature)

ROBERT J. BRYAN
United States District Judge